# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

RICHARD JAMES,

    Plaintiff,

v.

SYNOVUS BANK,
*d/b/a First Progress Card*,

    Defendant.

Civil Action No. TDC-19-1137

## MEMORANDUM OPINION

Plaintiff Richard James has filed this action against Synovus Bank d/b/a First Progress Card ("First Progress"), in which he alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x (2018). Pending before the Court is First Progress's Motion to Compel Arbitration. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

On May 7, 2016, James applied electronically for a credit card from First Progress. The online application included what has become known as a "clickwrap agreement," through which a user is required to accept certain terms and conditions by electronically checking a box on a website. Rosentover Aff. ¶ 6, Mot. Compel Arbitration Ex. 1, ECF No. 40-3; *see Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014) (defining a "clickwrap" agreement). First Progress asserts that James accepted the clickwrap agreement proffered as part of its online application, and that the terms of that agreement ("the Cardholder Agreement" or "the Agreement") included an arbitration clause providing that "ANY DISPUTE" between the parties

would "BE RESOLVED BY BINDING ARBITRATION." Cardholder Agreement at 6, Mot. Compel Arbitration Ex. 1-A, ECF No. 40-3. First Progress subsequently mailed the Cardholder Agreement to James, along with his new First Progress credit card, on May 17, 2016. James activated the card on May 28, 2016 and began using it to make purchases.

Some time later, James learned that Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union"), two consumer reporting agencies, had issued credit reports for James that included a balance on his First Progress account that he claims was inaccurate. On July 18, 2018, James notified Experian and Trans Union that he was disputing the accuracy of the First Progress account balance. James asserts that Experian and Trans Union then notified First Progress of his dispute. According to James, First Progress, Experian, and Trans Union all failed to conduct a reasonable investigation into the dispute and take proper corrective measures, adversely affecting his credit score.

James filed suit against First Progress, Experian, and Trans Union, asserting claims under the FCRA. In the Complaint, he also asserted FCRA claims against Credit Acceptance Corporation based on a similar dispute. James has since settled his claims against all Defendants except First Progress, which has filed the pending Motion to Compel Arbitration.

## DISCUSSION

In its Motion to Compel Arbitration, First Progress argues that because James accepted the Cardholder Agreement incorporated into the clickwrap agreement, he is bound by the arbitration clause contained in the Cardholder Agreement. First Progress further contends that under that arbitration clause, James's FCRA claims against First Progress are subject to binding arbitration. James has not filed a memorandum in opposition to the Motion.

## I. Legal Standard

Judges in this District have recognized that "motions to compel arbitration exist in the netherworld between a motion to dismiss and a motion for summary judgment." *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013) (quoting *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683 (D. Md. 2004)); *PC Const. Co. v. City of Salisbury*, 871 F. Supp. 2d 475, 477 (D. Md. 2012). Treating a motion to compel arbitration as a motion for summary judgment is proper where "the formation or validity of the arbitration agreement is in dispute," *Caire*, 982 F. Supp. 2d at 589, or where documents outside the pleadings must be considered "to effectively assess the merits of [the] motion," *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 683-84 (D. Md. 2004); *accord PC Const. Co.*, 871 F. Supp. 2d at 477 ("Whether the motion [to compel arbitration] should be treated as a motion to dismiss or a motion for summary judgment turns on whether the court must consider documents outside the pleadings."). *See also Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 & n.3 (4th Cir. 2016) (stating that under the Federal Arbitration Act, a party seeking a jury trial "must show genuine issues of material fact regarding the existence of an agreement to arbitrate," a standard that is "akin to the burden on summary judgment" (quoting *Chorley Enters. v. Dickey's Barbecue Rests.*, 807 F.3d 553, 564 (4th Cir. 2015))). Here, the Court will apply the summary judgment standard both because it must address whether an arbitration agreement was formed and because addressing this question requires consideration of materials beyond the pleadings.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light

3

most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II. Arbitrability

First Progress's request to compel arbitration is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–14 (2018), which provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*Id.* § 2. In order for this provision to apply, the United States Court of Appeals for the Fourth Circuit has required that four elements be established: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the . . . refusal of [one party] to arbitrate the dispute." *Galloway*, 819 F.3d at 84 (quoting *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 696 n.6 (4th Cir. 2012)). The first and the final elements are not at issue here. The existence of a dispute between the parties is shown by James's FCRA claim against First Progress, and James's refusal to arbitrate the dispute is shown by First Progress's Motion to Compel Arbitration. The other two elements, however, require further analysis.

4

### A. Arbitration Agreement

In deciding whether an agreement to arbitrate exists, courts "should apply ordinary state law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). First Progress assumes that Georgia law applies to this question, as the Cardholder Agreement includes a choice-of-law clause providing that federal and Georgia law govern any dispute relating to the Agreement. Although Maryland law, which governs the choice-of-law question, generally applies the law of state in which the contract was formed, if the contract contains a valid choice-of-law provision, it will apply the law of the jurisdiction identified in that clause. *See, e.g.*, *Cunningham v. Feinberg*, 107 A.3d 1194, 1204 (Md. 2015). However, First Progress's assumption puts the cart before the horse, as it is inappropriate to apply a term of the contract to the question of whether the parties agreed to the contract in the first place. *See, e.g.*, *John T. Jones Constr. Co. v. Hoot Gen. Constr. Co.*, 613 F.3d 778, 782-83 (8th Cir. 2010) (disregarding a contract's choice-of-law clause when deciding whether the contract had been formed); *NuCap Indus., Inc. v. Robert Bosch LLC*, 273 F. Supp. 3d 986, 1006 (N.D. Ill. 2017) (declining to apply a contract's choice-of-law provision in determining whether the contract existed, as doing so "would assume the answer to the antecedent question of contract formation at issue (i.e., beg the question)"). Nevertheless, the Court need not resolve which state's law applies to the contract formation question, as the answer to whether the parties agreed to arbitrate this dispute is the same under both Maryland and Georgia law. *See World Fuel Servs. Trading, DMCC v. Hebei Prince Shipping Co., Ltd.*, 783 F.3d 507, 514 (4th Cir. 2015) ("[W]e need not resolve the choice-of-law question, as it makes no discernible difference to the relevant analysis in the case at bar.").

Courts applying both Maryland law and Georgia law have acknowledged that clickwrap agreements can constitute valid contracts. *See CoStar Realty Info., Inc. v. Field*, 612 F. Supp. 2d 660, 668-69 (D. Md. 2009) (applying Maryland law); *see also Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1327-28, 1330-31 (11th Cir. 2016) (applying Georgia law); *Martinez v. Checkr, Inc.*, No. 19-4369-WMR-JKL, 2019 WL 8135598, at *1, *6 (N.D. Ga. Dec. 19, 2019) (same); *Fusha v. Delta Airlines, Inc.*, No. RDB-10-2571, 2011 WL 3849657, at *2-4 (D. Md. 2011) (applying Maryland law). Courts applying Georgia law have held that to establish the existence of a clickwrap contract and its inclusion of an arbitration clause, a party must provide specific evidence that the opposing party accepted the clickwrap agreement and that the agreement contained an arbitration clause. In *Bazemore*, for example, the defendant seeking to compel arbitration submitted an affidavit in which the affiant generally stated, without further explanation, "that he 'was able to ascertain that Plaintiff had applied for the [credit card] over the internet' and that plaintiff 'accepted the terms governing her account.'" *Bazemore*, 827 F.3d at 1330. This evidence, the court held, was "woefully inadequate," as it failed to explain how the affiant knew that the plaintiff had accepted the clickwrap contract or what the terms actually included. *Id.* at 1330-31. Courts addressing clickwrap contracts under Maryland law have accepted less specific evidence. In *CoStar Realty*, the court held that a party had consented to a forum-selection agreement based on evidence that users of a certain database had to accept the terms of use before accessing the database and that the party did not deny having used the database in the past. *CoStar Realty Info., Inc.*, 612 F. Supp. 2d at 668-69.

Here, First Progress has provided sufficient evidence to satisfy both standards. It has provided an affidavit from Todd Rosentover, Chief Risk Officer of the company that services the accounts tied to the credit cards issued by First Progress, who asserts that he has personal

6

knowledge of the records associated with James's account. Rosentover has stated that each applicant for a First Progress credit card must check a box signifying that the applicant "agree[s] to be bound by the terms and conditions of the Cardholder Agreement." Rosentover Aff. ¶ 7. Moreover, Rosentover asserts that he personally reviewed the data records for James's account, which show that James "affirmatively checked the box" on May 7, 2016 as part of his application for a First Progress credit card. *Id.* ¶ 9. He further attests that the relevant records do not show that James used the procedure provided for in the Cardholder Agreement to opt out of the arbitration clause. Finally, Rosentover has provided the text of the Cardholder Agreement to which James consented, which includes an arbitration clause. Where the party seeking to compel arbitration provides such specific evidence of the non-moving party's assent to an arbitration agreement and where the non-moving party fails to contest this evidence, the Court finds that, under either Maryland or Georgia law, First Progress has established that it entered an arbitration agreement with James.

The Court also finds that James's claims against First Progress fall within the terms of the arbitration agreement. Pursuant to the Cardholder Agreement's choice-of-law provision, this issue is governed by Georgia law. *See Cunningham*, 107 A.3d at 1204. The Cardholder Agreement provides that "ANY DISPUTE" between the parties will be arbitrated. Cardholder Agreement at 6. It further provides that "dispute" is defined as "any claim or controversy of any kind," and adds that the term "is to be given its broadest possible meaning." *Id.* at 7. Finally, it provides as an example of a dispute covered by the arbitration clause "any claim based upon a federal . . . statute." *Id.* James's claims against First Progress rest on a federal statute, namely the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x, and so necessarily fall within the definition of a dispute provided by the Cardholder Agreement. James's claim is therefore subject to arbitration.

7

### B. Interstate Commerce

The Court must also address whether the contract containing the arbitration clause evidences a transaction between James and First Progress relating to interstate commerce. *See Galloway*, 819 F.3d at 84. This element requires that the transaction "in fact involved interstate commerce" in that it implicates any part of "the full scope of Congress's commerce-clause power," but it does not require that the parties contemplated an interstate transaction at the time of the arbitration agreement. *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012). This analysis is limited by two important caveats. First, "the FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction." *Id.* Second, "in deciding to apply the FAA, we need not identify any specific effect upon interstate commerce, so long as in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Id.* at 697-98 (quoting *Citizens Bank v. Alafabco, Inc.*, 529 U.S. 52, 56-57 (2003)).

Here, James is a resident of Maryland, while First Progress is headquartered in Georgia and has locations in Alabama, Florida, South Carolina, and Tennessee. In operating its credit card business throughout the United States, First Progress "us[es] funds and resources outside of the state of Maryland in its transactions." Rosentover Aff. ¶ 13. In a similar case, the Fourth Circuit held that a financing agreement between a consumer in one state and a lender in another sufficiently implicated interstate commerce to allow the application of the FAA. *See Rota-McLarty*, 700 F.3d at 697. Likewise, the Court finds that the subject matter of the agreement at issue here—the issuance of a credit card by a company in one state to a consumer in another—is sufficiently related to interstate commerce to trigger the application of the FAA. *See id.* ("No elaborate explanation is needed to make evident the broad impact of commercial lending on the

national economy or Congress's power to regulate that activity pursuant to the Commerce Clause.").

### III. Dismissal

Having determined that First Progress is entitled to have its dispute with James arbitrated, the Court must next decide whether this case should be stayed or dismissed outright. While the FAA provides that courts should stay proceedings when compelling arbitration of certain claims, *see* 9 U.S.C. § 3, the Fourth Circuit has held that when "all of the issues presented in a lawsuit are arbitrable," "dismissal is the proper remedy," *Choice Hotels Int'l v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709-10 (4th Cir. 2001). Here, the arbitration agreement encompasses all of James's claims against First Progress, and all of James's claims against other defendants in this lawsuit have been dismissed, so all remaining claims must be arbitrated. Consequently, in addition to granting First Progress's Motion to Compel Arbitration, the Court will dismiss this case.

## CONCLUSION

For the foregoing reasons, First Progress's Motion to Compel Arbitration will be GRANTED. A separate Order shall issue.

Date: March 25, 2020              /s/ *Theodore D. Chuang*
                                                            THEODORE D. CHUANG
                                                            United States District Judge